UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

VINCENT HAIRSTON,

    Plaintiff,

v.

DEPARTMENT OF VETERANS AFFAIRS
and SECRETARY ROBERT A.
MCDONALD, in his official capacity,

    Defendants.
_____/

Case No. 1:15-CV-660

HON. GORDON J. QUIST

## **OPINION**

Plaintiff, Vincent Hairston, has sued Defendants, alleging a claim of hostile work environment based on race and sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* (Title VII). Defendants have filed a motion to dismiss Hairston's claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants contend that dismissal is required because Hairston's allegations fail to satisfy three elements of a hostile work environment claim under Title VII and that amendment would be futile because Hairston may not plead facts that he did not raise in the administrative proceeding. The motion is now fully briefed and ready for decision.

For the following reasons, the Court will grant Defendants' motion and dismiss Hairston's complaint.

### I. Background[1]

Hairston was employed by the United States Department of Veterans Affairs (VA) as a Medical Support Clerk in the Medical Support Assistant Area (MSA) at the Battle Creek VA

---

[1] The following facts are taken from Hairston's allegations in his complaint as well as Hairston's administrative claim documents attached to Defendants' brief in support of the instant motion, which Hairston references in his complaint.

Medical Center's Community Based Outpatient Clinic in Lansing, Michigan from January 27, 2013 until approximately July 11, 2014, when Hairston transferred to another VA facility in Georgia. (Dkt. # 1, ¶¶ 7–8, 44–45; dkt. # 6-3 at Page ID##47–48.) Hairston alleges that during his employment at the Lansing facility, he was subjected to a hostile work environment by three individuals—Janette Shaw, a nurse who was the leader of Hairston's Patient Aligned Care Team (*id.* at Page ID#48); James Rios, a Health Technician (dkt. # 1, ¶ 25); and Wendy Hamlin, the Program/Nurse Manager at the Battle Creek facility and Hamlin's first-line supervisor (*Id.* ¶ 14; dkt. # 6-3 at Page ID#48).

Hairston alleges that Shaw routinely harassed, embarrassed, and criticized him "to try to get him terminated out of a sense of personal animosity." (Dkt. # 1, ¶¶ 11, 55.) Hairston alleges six specific instances of harassment by Shaw:

- Around January or February of 2013, Shaw accused Hairston of scheduling an appointment. After Hairston stated that he had done so as instructed by another nurse and a social worker, Shaw continued to berate Hairston in front of everyone who was present. (*Id.* ¶¶ 8, 9.)

- On or about October 16, 2013, Shaw attempted to discuss a work incident with Hairston, but Hairston refused to engage Shaw. (*Id.* ¶ 11.)

- On or about October 28, 2013, Shaw accused Hairston of putting a patient's labs in the VISTA System. The same day, Shaw went to MSA to complain about an unaddressed alert. Hairston responded that MSA was short staffed, but Shaw blamed Hairston in front his colleagues without asking for any details. (*Id.* ¶¶ 12, 13.)

- On or about October 30, 2013, Shaw told nurse Sarah Jones that she should "be careful" about how she deals with Hairston. (*Id.* ¶ 17.)

- On or about November 7, 2013, Shaw went to Hairston's desk and inquired about a lab sign that had been put up on the clinic areas. Hairston asked Shaw why she was asking him about the sign and Shaw stated that she wanted to know whether a lab technician had told Hairston to put up the lab signs because she had to report it to the "higher ups." Hairston told Shaw that he did not want to be bothered, and Shaw responded, "'You don't have to write it down in your little book (in reference to Plaintiff's journal). I am not going to do anything to you.'" (*Id.* ¶¶ 19–21.)

2

- On or about February 20, 2014, Shaw called Hairston into her office to discuss a message received from MYHEALTH-E-VET about a patient. Shaw asked Hairston why she hadn't received the message, and Hairston explained what had happened and reviewed the reassignment message process for Shaw. Shaw wouldn't accept Hairston's explanation of the process and continued to badger Hairston. (*Id.* ¶¶ 27–30.)

Hairston alleges that Rios harassed Hairston on two occasions:

- On or about January 28, 2014, Rios approached Hairston about a lab order and claimed that Hairston had not checked the correct one. Rios said he was being held responsible and that Hairston had to answer for it. Hairston admitted his mistake and promised to do better in the future. Rios also erroneously attributed a GS7 status to Hairston, who in fact was a GS6 at the time. Rios left the room in anger after a verbal exchange regarding Rios's mistake. (*Id.* ¶¶ 25–26.)

- On or about February 21, 2014, Rios was very rude and abrasive to Hairston regarding a part order. Rios ignored Hairston's response and told Hairston to "do his damn job." Hairston told Rios that Hairston would contact his supervisor and the Office of Resolution Management (ORM) if Rios persisted in his harassment, and Rios asked if Hairston was making a threat. Hairston confirmed that he was stating the course of action he would take. (*Id.* ¶¶ 31–34.)

Hairston alleges that Hamlin harassed him as follows:

- On or about March 4, 2014, Hamlin forcefully attempted to get Hairston to discuss the recent incident with Rios, but Hairston refused to do so and told her to contact his attorney. (*Id.* ¶¶ 36–40.)

- On or about March 12, 2014, Hairston's co-workers told him that Hamlin was monitoring his work activities through the Microsoft Lynx Instant Messaging System. (*Id.* ¶ 43.)

Hairston notified Barbara Williams, the Administrative Officer of the Battle Creek VA Center about the incident in which Shaw accused Hairston of scheduling an appointment, and requested permission to use his leave to go home and deal with his anger about the incident. Williams told Hairston it wouldn't do him any good and denied his request. (*Id.* ¶ 10.) At some point, apparently in October 2013, Hairston contacted Susan Honaker, the Acting Administrative Officer, about Shaw's harassment. Hairston requested to take some time off to de-stress. Honaker said that she and Hamlin were going to talk to Hairston about the incidents. Hairston decided to not

3

take time off. Honaker ended up addressing the issue by sending an email to the department as a whole detailing the VA Harassment Policy. (*Id.* ¶¶ 14–15.)

On or about November 5, 2013, VA management initiated a fact-finding investigation into Hairston's reports of harassment by Shaw. The management recommended mediation between Shaw and Hairston and promised to explore a possible transfer. The management also advised Shaw of their expectations of civility in the proposed mediation. (*Id.* ¶ 18.) On or about December 31, 2013, Hairston emailed Hamlin about a transfer due to discrimination and the hostile work environment. Hairston gave Hamlin permission to speak to human resources about a transfer. A few days later, on January 2, 2014, human resources denied Hairston's request because it lacked authority to authorize a transfer. (*Id.* ¶¶ 23–24.)

Following the second incident with Rios, Hairston filed a complaint with ORM and contacted Hamlin. On March 4, 2014, ORM sent Hairston an email stating that it was investigating his complaint. The same day, Hamlin attempted to follow up with Hairston to obtain details about the incident with Rios, but Hairston refused to discuss it with her and told her to contact his attorney. (*Id.* ¶¶ 36–38.)

On October 25, 2013, Hairston presented his informal complaint to an Equal Employment Opportunity Counselor. (Dkt. # 6-1 at Page ID#42.) Hairston alleged that he suffered a hostile work environment on the basis of race and sex resulting solely from harassment by Shaw. Hairston alleged that Shaw approached him on October 16, 2013 about an incident in the clinic, and that from January 2013 through the present, Shaw scrutinized Hairston on everything he had done, embarrassed him and ridiculed his work, asked him, "'[a]re you really here to help?'" and "made it known she does not want him in the clinic." (*Id.*) Hairston filed a formal complaint with ORM on November 26, 2013. (Dkt. # 6-4.) On December 11, 2014, the Office of Employment

Discrimination Complaint Adjudication issued a final agency decision finding no discrimination. (Dkt. # 6-3.) The issues pertaining to the hostile work environment claim were limited to: (1) Shaw's general scrutiny and ridicule of Hairston from January 2013 to the present; (2) Shaw's negative comments on October 15, 2013; (3) Shaw's attempt to discuss an issue with Hairston on October 16, 2015; and (4) management's denial of Hairston's transfer request on January 2, 2014. (*Id.* at Page ID#48.)

## II. MOTION STANDARD

Pursuant to Federal Rule of Civil Procedure 8(a), a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Detailed factual allegations are not required, but "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964–65 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957)). The court must accept all of the plaintiff's factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

5

'show[n]'—that the pleader is entitled to relief." *Id.* at 679, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

In addressing a motion to dismiss, as a general rule, a district court may not consider matters outside the pleadings unless the motion is converted to a motion for summary judgment. Fed. R. Civ. P. 12(d); *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997). However, the Sixth Circuit has held that, without converting a motion to dismiss for a motion for summary judgment, a district court may "consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted). Because Hairston refers to his administrative claim documents in his complaint, the Court may consider the administrative process documents attached to Defendants' brief in deciding the instant motion to dismiss.

### III. Discussion

Defendants move for dismissal of Hairston's complaint because Hairston fails to allege three elements of a hostile work environment claim—harassment based on race or sex, creation of a hostile work environment, and employer liability. Defendants further argue that the facts supporting Hairston's claim must be limited to the facts he asserted in his administrative complaint. Defendants argue that such facts are insufficient to establish a hostile work environment claim, but the same is true even if all of the facts Hairston alleges in his complaint in this case are considered. Finally, Defendants argue that amendment is futile because Hairston cannot now allege additional facts that he did not allege in the administrative proceeding.

Hairston concedes that his complaint in this case includes facts that he did not raise in the administrative proceeding, but he argues that he is not precluded from asserting those facts in this case because they relate to or grow out of the facts he asserted in the administrative proceeding.

6

Hairston further argues that, considering these facts, his allegations suffice to state a hostile work environment claim. Hairston does not request an opportunity to amend to cure any pleading deficiency, nor does he claim to have additional facts to add to his claim.

The Court need not decide whether Hairston's factual allegations concerning the October 28, 2013, October 30, 2013, November 7, 2013, and February 20, 2014 incidents involving Shaw and Harrison's factual allegations regarding Rios and Hamlin—which were not raised during the administrative process—may be deemed exhausted, because Hairston fails to allege a hostile work environment claim even when all of his factual allegations are considered.

To state a claim for hostile work environment discrimination under Title VII, a plaintiff must allege that: (1) he was a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on race or sex; (4) the harassment created a hostile work environment; and (5) employer liability. *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006). Hairston fails to state a hostile work environment claim because none of his allegations indicates that the harassment of which he complains was based on or motivated by race or sex. In addition, Hairston's allegations are insufficient to show a hostile work environment. Finally, Hairston fails to allege employer liability.

### *Harassment Based on Sex or Race*

Title VII prohibits employers from discrimination in employment based on an "individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Harassment based on sex or race that creates a hostile work environment is one form of discrimination that Title VII prohibits. *See Meritor Sav. Bank. FSB v. Vinson*, 477 U.S. 57, 65, 106 S. Ct. 2399, 2404 (1986). Before a court inquires "as to whether the degree of 'harassment' was sufficient to violate Title VII, it is important to determine whether there was any discriminatory 'harassment' in the first place." *Schramm v. Slater*, 105 F. App'x 34, 39 (6th Cir. 2004). The Supreme Court has noted that "Title

VII does not prohibit all verbal or physical harassment in the workplace." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S. Ct. 998, 1002 (1998). Rather, Title VII pertains only to harassment based on a protected status, such as sex or race. *Id.* Thus, "the conduct of jerks, bullies, and persecutors is simply not actionable under Title VII unless they are acting because of the victim's [protected status]." *Wasek v. Arrow Energy Servs.*, 682 F.3d 463, 467 (6th Cir. 2012).

The Court has scoured Hairston's complaint for some hint that the incidents of harassment of which he complains were motivated by sex- or race-based animus, but has found none. While Hairston uses the terms "race" and "gender"[2] in the title of his claim and in one paragraph describes himself as an "African-American, Male." (dkt. # 1 at Page ID#8), he fails to allege a single incident that can arguably be considered of a sexual or racial nature. In fact, Hairston admits that Shaw—the primary harasser—tried "to get him terminated out of a sense of personal animosity," rather than because of his race or sex. (*Id.* ¶ 11.) Moreover, Hairston does not allege that Shaw, Rios, or Hamlin ever told a racially- or sexually-tinged joke, used a racial slur or epithet, or made sexually- or racially- suggestive comments to him or to others. Hairston's legal theory seems to be that Title VII was violated because he was criticized and/or harassed by other employees about his job performance and he happens to be an African-American male. However, the fact of a protected status is not enough; Hairston must allege harassment based on that protected status, and he has failed to do so. *See Watts v. Lyon Cnty. Ambulance Serv.*, 597 F. App'x 858, 860 (6th Cir. 2015) (noting that "the statute does not insulate men from any and all adverse employment actions"). Each of the incidents that Hairston describes in his complaint involve sex- and race-neutral disagreements or criticism regarding work incidents. Hairston argues that his allegations that Ms. Dotts—a white

---

[2] Although Hairston references gender, the Court understands that Hairston is actually asserting a claim based on sex discrimination, i.e., "the biological differences between men and women," verses gender discrimination, or "discrimination based on a failure to conform to stereotypical norms." *Smith v. City of Salem*, 378 F.3d 566, 573 (6th Cir. 2004).

8

female coworker—was given favorable treatment for dress code violations and that Hamlin monitored his work activities through the MSLynx Message System suffice to show racial or sexual animus. This argument is without merit. Hairston does not allege that he was harassed for, or accused of, dress code violations, and nothing about Hamlin's monitoring activities suggest racial or sexual animus. Thus, Hairston's allegations fail to raise an inference of discrimination based on sex or race.

### *Hostile Environment*

Even if the alleged harassment could be considered sexually or racially motivated rather than based solely on personal conflict and criticism, Hairston has failed to allege a hostile work environment. Such an environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 370 (1993) (internal quotation marks and citation omitted). In *Harris*, the Court observed:

> mere utterance of an . . . epithet which engenders offensive feelings in a employee does not sufficiently affect the conditions of employment to implicate Title VII. Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

*Id.* at 21-22, 114 S. Ct. at 370 (internal citations omitted). A court must consider the totality of the circumstances in determining whether an environment is "hostile" or "abusive," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23, 114 S. Ct. at 371. "A mere unfriendly work environment

9

is insufficient to establish liability." *Mast v. IMCO Recycling of Ohio, Inc.*, 58 F. App'x 116, 118 (6th Cir. 2003).

Considering the totality of the circumstances, Hairston's allegations fail to show an objectively hostile or offensive work environment. Hairston identifies a total of nine incidents involving three individuals that occurred over approximately fourteen months. All of the incidents were relatively minor and did not affect or interfere with Hairston's ability to do his job. Hairston alleges a total of six incidents involving Shaw, but only three in which she allegedly berated, badgered or criticized Hairston about his work performance. During those incidents, Shaw never made any sexually-or racially-derogatory comments to Hairston and she did not physically threaten or touch him. Similarly, in the two incidents involving Rios, Hairston alleges that Rios was angry and rude and abrasive to Hairston, but Rios did not make any sexually- or racially-tinged comments and did not physically threaten or intimidate Hairston. Finally, the single instance of interaction with Hamlin that Hairston claims was harassment—in which Hamlin "made a more forceful attempt to get" Hairston to discuss the recent incident involving Rios—and Hamlin's alleged monitoring of Hairston's work activities through the Microsoft Lynx Messaging System fall short of a hostile or offensive work environment. While all of these incidents may have been stressful or unpleasant for Hairston, they were not, from an objective standpoint, sufficiently severe to create a workplace permeated with "discriminatory intimidation, ridicule, and insult" that altered the terms or conditions of Hairston's employment. *Harris*, 510 U.S. at 21, 114 S. Ct. at 370 (internal quotation marks omitted). In short, Hairston's allegations reveal no more than "the ordinary tribulations of the workplace, such as the sporadic use of abusive language," that is not actionable under Title VII. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 2284 (1998); *see Hale v. ABF Freight Sys.*, 503 F. App'x 323, 337–38 (6th Cir. 2012) (holding that a "spate" of emails from the

plaintiff's supervisor to the plaintiff criticizing the plaintiff for his job performance did "not rise to the level of severity or frequency required to sustain a hostile work environment claim").

### *Employer Liability*

Even if Hairston had sufficiently alleged circumstances constituting a sex-or race-based hostile work environment, his claim would still be subject to dismissal because Hairston fails to allege employer liability. An employer is liable for coworker harassment if the employer "knew or should have known of the harassment, yet failed to take prompt and appropriate corrective action." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 338 (6th Cir. 2008). The employer may be held liable if its response "manifests indifference or unreasonableness." *Id.* (internal quotation marks omitted). "Generally, a response is adequate if it is reasonably calculated to end the harassment." *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 814 (6th Cir. 2013) (internal quotation marks omitted). Reasonable corrective steps "may include promptly initiating an investigation to determine the factual basis for the complaint, speaking with the specific individuals identified by [the complainant], following up with [the complainant] regarding whether the harassment was continuing, and reporting the harassment to others in management." *Id.* (internal quotation marks omitted).

Hairston only alleges that he reported a few of the incidents to a supervisor, and he does not allege that he told the supervisors that he viewed any of the incidents as involving race or sex discrimination. As set forth above, none of the details that Hairston relates in his complaint suggests that any of the incidents were motivated by race or sex discrimination. Moreover, Hairston's own allegations demonstrate that VA supervisors took appropriate steps that were reasonably calculated to end the harassment. Hairston alleges that after he complained about Shaw to Susan Honaker, she and Hamlin met with Hairston to talk about his concerns. (Dkt. # ¶ 14.) Honaker sent an email to the department as a whole reminding them of the VA's harassment policy. (*Id.* ¶ 15.) Hairston also

11

alleges that VA management initiated a fact-finding investigation, recommended mediation between Hairston and Shaw, and reminded Shaw that they expected her to be civil during the mediation. (*Id.* ¶ 18.) In addition, when Hairston requested a transfer, Hamlin contacted human resources to determine whether the Lansing facility could transfer Hairston to another facility. Hamlin learned that the Lansing facility had no authority to transfer Hairston. (*Id.* ¶ 24.) Finally, Hairston complained to ORM and Hamlin about the February 21, 2014 incident with Rios, and ORM investigated his complaint. When Hamlin attempted to discuss the incident with Hairston, Hairston refused to discuss it, thus preventing her from further pursuing the complaint. (*Id.* ¶¶ 34, 37–38.)

Hairston argues that the VA's response was inadequate because it refused to facilitate Hairston's requested transfer and took insufficient action to end the harassment. However, as Hairston admits in his complaint, the agency was not authorized to transfer Hairston. Moreover, given the apparent nature of Hairston's reported complaints—a dispute between coworkers (Hairston and Shaw) regarding work performance, lacking any indicia of sexual or racial harassment—the agency's response was adequate. Thus, Hairston's arguments lack merit.

### IV. Conclusion

For the foregoing reasons, the Court will grant Defendants' motion to dismiss.

An Order consistent with this Opinion will enter.


Dated: December 21, 2015                             /s/ Gordon J. Quist
                                                    GORDON J. QUIST
                                              UNITED STATES DISTRICT JUDGE